THE STATE EX REL. PAINTER ET AL. *v.* BRUNNER, SECY. OF STATE, ET AL.

[Cite as *State ex rel. Painter v. Brunner,* **127 Ohio St.3d 463, 2010-Ohio-6461.**]

*Motions to intervene as respondents granted — Motion for temporary injunctive relief granted — Alternative writ in mandamus granted, and briefing schedule established — Complaint for writ of prohibition dismissed.*

(No. 2010-2205 — Submitted December 28, 2010 — Decided December 29, 2010.)

IN MANDAMUS and PROHIBITION.

_____

{¶ 1} Relators have filed a complaint seeking writs of mandamus and prohibition and a motion for temporary injunctive relief.

{¶ 2} It is ordered, sua sponte, that an alternative writ of mandamus is granted, and the following briefing schedule is set for the presentation of evidence and filing of briefs pursuant to S.Ct.Prac.R. 10.6: Relators shall file their brief and evidence no later than January 3, 2011, and respondents shall file their briefs and evidence no later than January 5, 2011.

{¶ 3} The parties shall serve all documents filed in this case by personal service, facsimile transmission, or e-mail on the date of the filing. The Clerk's office shall refuse to file any reply briefs or requests for extension of time in this case.

{¶ 4} It is further ordered that the motions of Tracie Hunter and the Northeast Ohio Coalition for the Homeless and Ohio Democratic Party for leave to intervene as respondents are granted.

{¶ 5} It is further ordered that respondents and their agents, servants, employees, attorneys, and other persons acting on their behalf are hereby stayed from opening the provisional ballot envelopes pending further order of the court.

**{¶ 6}** It is further ordered that the complaint for a writ of prohibition is dismissed.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., concurs separately.

_____

**BROWN, C.J., concurring.**

**{¶ 7}** On November 2, 2010, relator John Williams and Tracie Hunter were candidates for the elected office of judge of the Hamilton County Court of Common Pleas, Juvenile Division. According to the most recent count of the Hamilton County Board of Elections, only 23 votes, out of nearly 230,000 votes cast, separate the totals for the two competing candidates. However, the votes of 849 Hamilton County electors who voted provisionally were not counted, based on the board's conclusion that these electors voted in the wrong precinct.

**{¶ 8}** According to a statement submitted by two Hamilton County Board of Elections members, many of these 849 Hamilton County electors arrived at the correct multiprecinct voting location but were erroneously directed by poll workers to vote a ballot formulated for the wrong precinct — that is, a precinct other than the precinct in which the voter resided. In many cases, voters were simply directed to the wrong table.[1] The question presented is whether Ohio electors otherwise qualified to vote should be disenfranchised when errors by election officials result in their votes being cast in the wrong precinct. I believe

---

[1] I suspect that some Hamilton County voters in multiprecinct locations may similarly have been mistakenly directed by poll workers to vote on voting machines programmed with ballots for precincts other than the one in which the voter resided. However, unlike votes cast provisionally on paper and segregated in provisional-ballot envelopes, any machine-cast regular votes, even if cast in incorrect precincts, were immediately commingled. Those votes have since been counted. I question whether the disparate treatment of voters who voted regular ballots in the wrong precinct and voters who voted provisionally in the wrong precinct raises equal protection concerns.

the answer is no. An elector's fundamental constitutional right to participate in our democracy and cast a ballot must prevail over a technical application of the statutory law, particularly in the face of a poll worker's mistake. Nevertheless, I reluctantly concur in the court's grant of an expedited alternative writ that will allow presentation of evidence and briefs prior to this court's resolution of the merits of this case. I write separately to explain why my concurrence is reluctant.

{¶ 9} In my view, relators' claims appear to lack merit. Additionally, respondents have presented highly convincing arguments that relators' claims for extraordinary relief should ultimately be dismissed. I am not prepared to conclude, however, that respondents have met the standard required for dismissal of an original action at this procedural stage, i.e., the S.Ct.Prac.R. 10.5 determination. That is, I do not find it beyond doubt, after presuming the truth of all material factual allegations of relators' complaint and making all reasonable inferences in their favor, that relators are not entitled to the requested extraordinary relief in mandamus. See *State ex rel. Duke Energy Ohio, Inc. v. Hamilton Cty. Court of Common Pleas*, 126 Ohio St.3d 41, 2010-Ohio-2450, 930 N.E.2d 299, ¶ 13.

{¶ 10} Elections are seldom perfectly administered. Relators argue that Ohio statutes[2] provide that votes cast in the wrong precinct are to be excluded. In my view, however, when a voter votes in the wrong precinct as a result of error by election officials, the fundamental constitutional rights of a qualified Ohio elector to have his or her vote counted in a race in which the elector was clearly qualified to vote must prevail. And those most fundamental constitutional rights under the Ohio and United States Constitutions should prevail over a technical violation of R.C. 3599.12(A)(1), which prohibits a person from voting "in a precinct in which that person is not a legally qualified elector."

---

[2] See, e.g., R.C. 3503.01(A), 3505.181(C)(1), and 3599.12(A)(1).

{¶ 11} The record before us clearly supports the inference that election officials in Hamilton County may have made mistakes in administering the election as to a subset of provisional voters. For example, there are allegations that some of the voters at issue had recently been reassigned to new precincts, some as a result of redrawn precinct lines, and some had been reassigned to new multiprecinct voting locations. Despite these challenges, these voters arrived to vote at the proper location where, through no fault of their own, they were directed by poll workers to the wrong table. As a result, these voters inadvertently voted in the wrong precinct. In these circumstances, the fundamental constitutional rights of the elector require that the votes be counted. A federal judge has issued an order to election officials to investigate and determine whether poll-worker error contributed to electors' voting in the wrong precinct. No one has suggested that Hamilton County poll workers intentionally misdirected voters who appeared at multiprecinct voting locations. But if an investigation discloses that poll workers did err, albeit innocently, the interests of affected Ohio electors in having their votes counted should, in my view, prevail.

{¶ 12} My view is shared by two Ohio federal district court judges who believe that issues of equal protection and due process are implicated by the failure to count votes in these circumstances. These federal courts have recognized that the United States Constitution prohibits the exclusion of votes from the official election count when a vote was improperly cast in the wrong precinct because of poll-worker error. The federal constitution is the supreme law of the land, and no Ohio statute that, as applied, conflicts with a voter's constitutional rights can prevail.

{¶ 13} In *Northeast Ohio Coalition for the Homeless v. Brunner*, S.D. Ohio (E.D.) No. C2-06-896, the United States District Court for the Southern District of Ohio, Eastern Division, entered a consent decree in April 2010 in a case challenging Ohio's identification and provisional-ballot laws. The decree

stated that its purpose included the following: ensuring that "the fundamental right to vote is fully protected for registered and qualified voters who lack the identification required by the Ohio Voted ID Laws" and ensuring that "voters will not be deprived of their fundamental right to vote because of failures by poll workers to follow Ohio law." The decree further noted that the Supremacy Clause, Clause 2, Article VI of the United States Constitution, provides that the federal constitution constitutes "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Consistent with these purposes, the decree specified that boards of elections may not reject a provisional ballot cast by a voter who uses only the last four digits of his or her Social Security number as identification if the voter has cast a provisional ballot in the correct polling place but — for reasons attributable to poll-worker error — in the wrong precinct.

{¶ 14} Similarly, in a case arising out of the same circumstances that underlie this case, i.e., the November 2, 2010 race for Hamilton County Juvenile Court judge, Chief Judge Susan J. Dlott of the federal district court issued a preliminary injunction in *Hunter v. Hamilton Cty. Bd. of Elections*, S.D. Ohio (W.D.) No. 1:10-cv-820, 2010 WL 4878957. Judge Dlott granted a preliminary injunction "insofar as it seeks an order commanding [the board and its members] to investigate whether provisional ballots cast in the correct polling location but wrong precinct were improperly cast because of poll worker error." Judge Dlott reasoned that because the board of elections had previously counted 26 provisional ballots cast at the Hamilton County board office but in the wrong precinct due to "clear poll worker error," its failure to apply similar scrutiny to other provisional ballots cast at the correct polling place but in the wrong precinct "raises equal protection concerns." To prevent irreparable harm, Judge Dlott ordered that the board of elections "examine all 849 faulty provisional ballots for

poll worker error." Judge Dlott further ordered that the board "immediately begin an investigation into whether poll worker error contributed to the rejection of the 849 provisional ballots now in issue and include in the recount of the race for Hamilton County Juvenile Court Judge any provisional ballots improperly cast for reasons attributable to poll worker error." That order was appealed to the United States Court of Appeals for the Sixth Circuit, and that appeal remains pending.

{¶ 15} In my view, the filing of this action raises significant issues of comity and jurisdictional priority, which weigh heavily against the issuance of extraordinary relief in the form of a writ of mandamus. This court should not interfere with the litigation of these issues already underway in the federal courts. It is difficult to see the filing of this action as anything other than an attempt by relators to collaterally attack a federal court order issued in federal litigation. As argued by respondents, the requested writ would place the board and the secretary in "an untenable position of potential competing court orders." Moreover, the relators' filing of an original action in this court did not occur until *after* the Sixth Circuit dissolved a stay it had previously issued. That is, relators turned to this court to seek a stay and other relief only after being denied similar relief by the federal court.

{¶ 16} Relator John W. Painter, a Hamilton County elector who voted in the November 2, 2010 election, and whose vote has presumably already been included in the vote count, asserts that his vote is subject to dilution if any of the ballots at issue that were voted provisionally are counted. However, the relators do not contend, nor is there any reason to suspect, that the provisional voters at issue were not qualified to vote for the *countywide* judge's race at issue. As to that race, whether a qualified Hamilton County voter cast his ballot in the wrong precinct is irrelevant.

{¶ 17} I concur in the court's order allowing intervention by Tracie Hunter, the Northeast Ohio Coalition for the Homeless, and the Ohio Democratic

Party and in the court's dismissal of relators' claim seeking a writ of prohibition. I further concur in the court's order of a stay that will, until this original action is resolved, preclude respondents from opening the envelopes containing ballots cast provisionally by 849 Hamilton County electors. The secrecy of those votes must be protected. Finally, as discussed above, I reluctantly concur in the court's grant of an expedited alternative writ that will allow presentation of evidence and briefs prior to this court's resolution of the merits. I would, however, allow more time for the presentation of evidence and briefs than provided by the majority.

_____

Taft, Stettinius & Hollister, L.L.P., R. Joseph Parker, W. Stuart Dornette, and John B. Nalbandian, for relators.

Richard Cordray, Attorney General, and Richard N. Coglianese, Erick D. Gale, and Michael J. Schuler, Assistant Attorneys General, for respondent Secretary of State Jennifer Brunner.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and David T. Stevenson, James W. Harper, Colleen M. McCafferty, and Thomas Grossmann, Assistant Prosecuting Attorneys, for respondent Hamilton County Board of Elections.

Gerhardstein & Branch Co., L.P.A., Jennifer L. Branch, and Alphonse A. Gerhardstein, for intervening respondent Tracie Hunter.

Porter, Wright, Morris & Arthur, L.L.P., Caroline H. Gentry, and Sheena L. Little; and The Chandra Law Firm, L.L.C., and Subodh Chandra, for intervening respondent Northeast Ohio Coalition for the Homeless.

McTigue Law Group, Donald J. McTigue, and Mark A. McGinnis, for intervening respondent Ohio Democratic Party.

_____